IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| MIGUEL DORANTES, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. CIV-22-50-D |
| | ) |
| WHITTAKER, *et al.*, | ) |
| | ) |
| Defendants. | ) |

# DEFENDANT MISTY TUCKER, DUSTIN WHITTAKER, BAILEY GAMBLE, AND KEVIN MANGUS MOTION FOR SUMMARY JUDGMENT

Defendants Misty Tucker, Dustin Whittaker, Bailey Gamble, and Kevin Mangus, request this Court grant them summary judgment on all remaining claims in Mr. Dorantes 2nd Amended Complaint. (Dkt. 47). Mr. Dorantes is convicted felon and former inmate at the Grady County Correctional facility. He claims that his 8th Amendment Constitutional rights were violated because Tucker, Whittaker, Gamble, and Mangus denied him medical care. The evidence demonstrates these Defendants treated Mr. Dorantes appropriately. Mr. Dorantes had not suffered any serious medical issues while in the supervision of these Defendants.

## STATEMENT OF THE CASE

Mr. Dorantes was a convicted Federal prisoner serving time for possession with intent to distribute and dangerous drugs. On October 7, 2021, while on a video telephone call with a female and small child, Mr. Dorantes sees another inmate enter the jail pod carrying a bed roll. Mr. Dorantes immediately drops the telephone receiver and begins to violently attack the new inmate. The entire attack is caught on video and seen by the female

and small child[1]. While punching and kicking this inmate, Grady County officers order Mr. Dorantes to stop the attack. Mr. Dorantes refuses to comply and continues assaulting the other inmate.

Grady County officers open the pod door and fire non-lethal projectiles at Mr. Dorantes to gain his compliance. Only after being struck in the head by these projectiles, does Mr. Dorantes cease attacking the other inmate. Mr. Dorantes is escorted out of the jail pod and immediately taken to medical staff to treat the wound on his forehead. He walks out of the pod on his own power with the Grady County officers.

When Mr. Dorantes arrives at medical, his wound is cleaned and sealed using medical Dermabond. Dermabond is a topical skin adhesive used as an alternative to stitches, sutures, or adhesive strips, and it was appropriately used to close Mr. Dorantes' minor laceration on his forehead. Mr. Dorantes is checked for a concussion. Medical staff note his pupils reactive and within normal limits indicating no concussion. Mr. Dorantes is scheduled to be transferred out of Grady County to a different facility so medical staff clears him for travel.

On October 10, 2021, two days later, Mr. Dorantes puts in a sick call request. His complaint is for headaches and pain, which he relates to the non-lethal projectile impact. His request does not mention the wound bleeding at all. He is being given Tylenol for his pain. Medical staff, and Turn Key employee, Stephen Wood, RN examined him on October 15, 2021. Nurse Wood notes that the head "wound is unremarkable" and "no bandaids

---

[1] See Exhibit 5 to the Special Report (Dkt 32) for video of the incident.

needed." The dermabond adhesive was "close to being sloughed off." Mr. Dorantes never makes another sick call request. Mr. Dorantes leaves Grady County on October 28, 2021. Thirteen days after this visit with Nurse Wood and Mr. Dorantes never made a single sick call request, nor request to staff, nor any grievances about his medical care. In the twenty days following the incident, Mr. Dorantes made **only one sick call** request which was answered.

Mr. Dorantes was never in any serious medical danger. He had a minor head injury because he started a fight and refused to comply with directions to cease his attack on another inmate. Medical staff treated him quickly and appropriately. He had a cut on his head which was treated and healed. No medical records exist which indicate any serious risk to Mr. Dorantes health ever existed while an inmate at Grady County Correctional facility. No evidence exists which would tend to show any improper behavior by any Grady County Correctional facility staff.

## LCvR 56.1(b) STATEMENT OF FACTS

1. The only remaining claims against these Defendants are for violation of Plaintiff's 8th Amendment rights for the denial of medical care. (Dkt. 51).

2. Defendants' Tucker, Whittaker, Gamble, and Mangus are not medical professionals.  See Exhibits 1, 2, 3, and 4, Declarations of Tucker, Whittaker, Gamble, and Mangus.

3. The initial injury to Mr. Dorantes was caused because he started beating on another inmate and the detention officers had to stop him.

> **Q. Okay. And that's what causes the wound on your head. They were stopping your, basically, beating on this other guy; right?**
>
> A. Correct.
>
> See Exhibit 5, Plaintiff's deposition page 24, line 22-25

4. Mr. Dorantes was immediately taken to medical following this incident and was treated by medical staff stopping the bleeding and clearing him to travel. See Exhibit 6, medical records of Mr. Dorantes.

5. Mr. Dorantes requested medical and was seen a few days later by medical staff at Grady County on October 15. They note his "wound is unremarkable" and that bandaids are not needed. See Exhibit 6, medical records of Mr. Dorantes.

6. Mr. Dorantes's medical request does not mention any complaints of bleeding. He filled out the request himself and did not mention actively bleeding.

    > **Q. Okay. All right. Stop sharing that. Okay. So your medical request from a few days earlier and this note don't mention any bleeding at all; correct?**
    >
    > A. Correct. It doesn't mention it at all.
    >
    > **Q. Okay. And you filled out the request and you did not include any -- any note about bleeding at all; correct?**
    > A. Correct.
    >
    > See Exhibit 5, deposition pages 35-36, lines 23-6

7. Staff were treating Mr. Dorantes's pain.

    > **Q. Okay. So they're -- the staff is trying to treat your pain; right?**
    >
    > A. Correct.
    >
    > See Exhibit 5, deposition page 37, lines 1-3

**Q. Okay. Okay. So even back on 10-11, which is when that was dated, the officers and the staff at Grady County are attempting to treat your pain; is that fair?**

A. Yes.

See Exhibit 5, deposition page 39, lines 15-19

8. Mr. Dorantes was never denied access to medical care when requested through the sick call request procedures available to him while at Grady County. See Exhibits 1, 2, 3, and 4.

9. Mr. Dorantes was never at risk for permanent or life threating injuries. His main complaint was pain.

**Q. Okay. Okay. So the pain was worse than the blood to you?**

A. Oh, yes, most definitely, by far. Yes.

**Q. Okay. So -- okay. And we saw they were giving you Tylenol for the pain; right?**

A. Yes. Yes. Correct.

See Exhibit 5, deposition page 45, lines 14-19.

10. Mr. Dorantes's only requests for medical intervention related to pain management. He was being treated with Tylenol and/or Ibuprofen for his pain complaints. See Exhibits 5 & 6, deposition testimony and medical records.

11. Mr. Dorantes never made a sick call or medical request for anything related to "excessive bleeding" or "wound care." See Exhibit 6, medical records.

12. Mr. Dorantes knew how to make sick call or medical requests.

**Q. Okay. All right. But when you were – I guess, when you were transferred there to Grady County, they told you -- you knew how to -- or, eventually you learned how to do, like, requests of staff and medical requests; right?**

A. Yes.

**Q. So you knew how to do that while you were at Grady County?**

A. Yes.

See Exhibit 5, deposition page 20, lines 4-12

13. The records show that Dorantes' only medical request related to his laceration/head was submitted two days later, on Tuesday, October 10, 2021, and he was seen in Sick Call on that Friday, October 15, 2021. See Exhibit 6, medical records.

14. The records show that on October 15, 2021, his wound was almost completely healed, his Dermabond was sloughing off as expected and intended, he was not bleeding, he had no signs of infection, and he did not verbalize any complaints to Nurse Wood regarding headaches or difficulty sleeping during that clinic visit. See Exhibit 6, medical records.

15. Defendants' Tucker, Whittaker, Gamble, and Mangus did not deny Mr. Dorantes any requests to seek medical care or treatment. See Exhibit 1, 2, 3, and 4 Declarations of Tucker, Whittaker, Gamble, and Mangus.

16. Defendants' Tucker, Whittaker, Gamble, and Mangus do not remember ever seeing Mr. Dorantes with blood dripping down his face. See Exhibits 1, 2, 3, and 4 Declarations of Tucker, Whittaker, Gamble, and Mangus.

17. Defendants' Tucker, Whittaker, Gamble, and Mangus would instruct Mr. Dorantes to submit a medical request whenever he felt he needed to see a medical professional. See Exhibits 1, 2, 3, and 4 Declarations of Tucker, Whittaker, Gamble, and Mangus.

## **STANDARD OF REVIEW FOR SUMMARY JUDGMENT**

Rule 56(a) of the Federal Rules of Civil Procedure provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Summary judgment is not a disfavored procedural shortcut, but an integral part of the federal rules as a whole. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

In *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986), the Supreme Court held that "there is no issue for trial unless there is sufficient evidence favoring the non-moving party for a jury to return a verdict for that party." The Court further held that "if the evidence is merely colorable, or not significantly probative, summary judgment may be granted." *Id.* In addition, the *Anderson* Court stated that "the mere existence of a scintilla of evidence in support of a plaintiff's position will be insufficient; there must be evidence on which a jury could reasonably find for the plaintiff." *Id.* A movant's summary judgment burden may properly be met by reference to the lack of evidence in support of plaintiff's position. *See Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998) (citing *Celotex*, 477 U.S. at 325).

## PROPOSITION I:
## Mr. Dorantes received appropriate medical care for his injuries.

The only claims are that these four Defendants denied Mr. Dorantes medical treatment. All the evidence demonstrates that Mr. Dorantes received medical care whenever he submitted a sick call request. The medical evidence also demonstrates he was never in serious medical danger of substantial risk.

The Eighth Amendment requires prison officials to provide humane conditions of confinement, including access to the basic necessities of health care. *See Farmer v. Brennan*, 511 U.S. 825, 832, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994); *Estelle v. Gamble*, 429 U.S. 97, 103, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976). The United States Supreme Court has made clear that "deliberate indifference to serious medical needs of prisoners" may amount to a violation of the Eighth Amendment and state a cause of action under 42 U.S. 1983. *Id*. at 104. However, mere negligence – even gross negligence – is insufficient to support a claim of deliberate indifference under § 1983. *Berry v. City of Muskogee, Oklahoma*, 900 F.2d 1489, 1495 (10th Cir. 1990) (citing *City of Canton v. Harris*, 489 U.S. 378, 388 and n. 7, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989)). *See also, Board of County Comm'rs of Bryan County, Okla. v. Brown*, 520 U.S. 397, 410, 117 S.Ct. 1382, 137 L.Ed.2d 626 (1997) ("[D]eliberate indifference is a stringent standard of fault, requiring proof that [an] actor disregarded a known or obvious consequence of his action."). "It is obduracy and wantonness, not inadvertence or error in good faith," that violate the Constitution with regard to the "supplying of medical needs..." *Whitley v. Albers*, 475 U.S. 312, 319, 106 S.Ct. 1078, 89 L.Ed.2d 251 (1986).

A § 1983 claim alleging inadequate or delayed medical care involves "both an objective and subjective component, such that [the Court] must determine both whether the deprivation is sufficiently serious and whether the government official acted with a sufficiently culpable state of mind." *Oxendine v. R.G. Kaplan, M.D.*, 241 F.3d 1272, 1276 (10th Cir. 2001)(quoting *Perkins v. Kansas Dept. Of Corrections*, 165 F.3d 803, 809 (10th Cir. 1999) (alterations omitted). As to the objective component, a medical need is considered sufficiently serious if a physician has diagnosed the condition and mandated treatment, or the condition is so obvious that even a lay person would easily recognize the medical necessity for a doctor's attention. *Oxendine,* 241 F.3d at 1276.

Mr. Dorantes was not suffering from a "condition so obvious that even a lay person would easily recognize the medical necessity." Mr. Dorantes had a headache and cut to his forehead. The cut had been sealed with surgical glue. He was in no danger of any serious damage. He was being treated for pain with Tylenol. His cut was not actively bleeding so as a lay person would "easily recognize" he needed medical attention. He did not like the Tylenol treatment, but has never offered any alternatives. He made one medical request and it did not mention bleeding. It mentions pain, which was being treated. When he made the sick call request, he was seen by medical staff.

When the medical professionals see Mr. Dorantes, his wound is "unremarkable" and does not even need band aids. This was objectively not a serious injury risking permanent injury or death. Even if these Defendants ignored Mr. Dorantes verbally asking for help (which is absolutely denied), his medical condition was not so severe that a delay would

be a constitutional violation. No lay person would have looked at Mr. Dorantes and believed he was in any immediate danger of serious medical harm.

As to the subjective prong of the deliberate indifference test, a plaintiff must establish that a defendant knew of a substantial risk of harm and failed to take reasonable measures to abate it. *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999) (quoting *Farmer*, 511 U.S. at 847). In that regard, a plaintiff must show that the defendant was "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists" and that the defendant actually drew that inference. *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005) (quoting *Farmer*, 511 U.S. at 837, internal quotation marks omitted). However, in this case, there is simply no evidence that Defendants Whittaker, Tucker, Gamble, or Mangus were subjectively aware that Mr. Dorantes faced a serious risk of harm and ignored it (because there was no serious risk). The medical staff was providing Tylenol for pain. There was not much else the staff could do given the injury and complaints of Mr. Dorantes.

### PROPOSITION II:
### These defendants possess qualified immunity.

Defendants sued in their individual capacities in an action under 42 U.S.C. § 1983 "are entitled to qualified immunity unless it is demonstrated that their conduct violated clearly established constitutional rights of which a reasonable person in their positions would have known." *Murrell v. Sch. Dist. No. 1*, 186 F.3d 1238, 1251 (10th Cir. 1999). Qualified immunity is therefore an affirmative defense that provides immunity to suit in a § 1983 action. *Adkins v. Rodriguez*, 59 F.3d 1034, 1036 (10th Cir. 1995). When the defense

is raised, the plaintiff bears the burden to show the defendant's actions violated a constitutional right, and that the allegedly violated right was clearly established at the time of the conduct at issue. *Mick v. Brewer*, 76 F.3d 1127, 1134 (10th Cir. 1996).

Qualified immunity is an entitlement not to stand trial or face the burdens of litigation. *Mitchell v. Forsyth*, 472 U.S. 511, 527 (1985). It is an immunity from suit rather than a mere defense to liability. *Id*. Qualified immunity gives ample room for mistaken judgment by protecting all but the plainly incompetent or those who knowingly violate the law. *Hunter v. Bryant*, 502 U.S. 224, 229 (1991). The issue of qualified immunity is for the courts and not the trier of fact. *Id.*

As a threshold matter, if no federal right on the facts alleged would have been violated, no further inquiry is required, and the defendant is entitled to dismissal. *Saucier v. Katz*, 533 U.S. 194, 200-01 (2001) (overruled in part, *Pearson v. Callahan*, 555 U.S. 223, 236 (2009)). If a violation of federal rights can be made out, then "[t]he relative, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable [officer in the Defendants' position] that his conduct was unlawful in the situation his confronted." *Id*. at 202. See also *Brousseau v. Haugen*, 543 U.S. 194, 198 (2004) (emphasizing the inquiry should be conducted in light of the specific context of the case.)

Here, as discussed above, Mr. Dorantes has failed to show that any of these Defendants violated his constitutional rights. Accordingly, Defendants are entitled to qualified immunity and Mr. Dorantes's § 1983 claims against them should be dismissed. *See Hinton v. City of Elwood*, 997 F.2d 774, 783 (10th Cir. 1993) (citing *Siegert v. Gilley*, 500 U.S.

226, 231-33 (1991)) (finding an officer is entitled to qualified immunity if their conduct did not violate the law). Mr. Dorantes faced no serious risk of harm and was never denied proper medical treatment following a proper sick call request.

However, even if the Court finds that Mr. Dorantes's constitutional rights were violated, Defendants would still be entitled to qualified immunity as it was not clearly established that their actions were unconstitutional. In *Anderson v. Creighton*, 483 U.S. 635, 639 (1987), the U.S. Supreme Court explained that "whether an official protected by qualified immunity may be held personally liable for an allegedly unlawful official action generally turns on the 'objective legal reasonableness' of the action, assessed in light of the legal rules that were 'clearly established' at the time it was taken." (internal citations omitted). The qualified immunity analysis in this regard is analyzed "in a more particularized, and hence more relevant, sense." *Id*. at 640. Specifically, "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id. See also Saucier*, 533 U.S. at 202 (citing *Wilson v. Layne*, 526 U.S. 603, 615 (1999)).

Deciding when a right is clearly established is a crucial part of qualified immunity analysis. "A [g]overnment official's conduct violates clearly established law when, at the time of the challenged conduct, [t]he contours of [a] right [are] sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (citations and quotations omitted). "The question of whether a right is clearly established must be answered in light of the specific context

of the case, not as a broad general proposition." *Morris v. Noe*, 672 F.3d 1185, 1196 (10th Cir. 2012) (internal quotations omitted). "The Supreme Court has 'repeatedly told courts not to define clearly established law at a high level of generality since doing so avoids the crucial question whether the official acted reasonably in the particular circumstances that he or she faced.'" *Estate of B.I.C. v. Gillen*, 761 F.3d 1099, 1106 (10th Cir. 2014) (quoting *Plumhoff v. Rickard*, 134 S.Ct. 2012, 2023 (2014). *See also White v. Pauly*, 137 S.Ct. 548, 552 (2017). Thus, "a general statement of law . . . is not sufficient to show that the law was clearly established." *Gillen*, 761 F.3d at 1106.

"Ordinarily, in order for the law to be clearly established, there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." *Klein v. City of Loveland*, 661 F.3d 498, 511 (10th Cir. 2011). "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be apparent." *Anderson*, 483 U.S. at 640. "[T]he plaintiff's burden in responding to a request for judgment based on qualified immunity is to identify the universe of statutory or decisional law from which the [district] court can determine whether the right allegedly violated was clearly established." *Elder v. Holloway*, 510 U.S. 510, 514 (1994) (citation and quotation marks omitted). While a court need not point to any prior authority which has precisely the same facts of this case in order to find clearly established law, existing precedent

must "squarely govern" the case and "must have placed the statutory or constitutional question beyond debate." *Aldaba v. Pickens*, 844 F.3d 870, 877 (10th Cir. 2016) (citations and internal quotation marks omitted). "[C]learly established law must be 'particularized' to the facts of the case." *White*, 137 S.Ct. at 552.

In light of the specific context of this case and the qualified immunity inquiry, Mr. Dorantes cannot show that Defendants violated Mr. Dorantes's clearly established, federal constitutional rights. Defendants are unaware of any precedent which states that a minor head cut being actively treated by medical staff was a violation of an inmate's 8th Amendment constitutional rights. Mr. Dorantes cannot cite to any U.S. Supreme Court or Tenth Circuit authority involving a similar fact pattern as that regarding Defendants' conduct which clearly establishes that such acts or omissions constitute a violation of federal rights. Nor can Mr. Dorantes demonstrate that the combined weight of authority from other courts puts the issue beyond debate such that every reasonable official would have understood that Defendants' acts were a violation of federal constitutional rights. Accordingly, Defendants are entitled to qualified immunity with regard to Mr. Dorantes's § 1983 claims.

WHEREFORE, Defendants, Tucker, Gamble, Whittaker, and Mangus, request this Court grant them summary judgment on all claims, along with any other relief deemed just and proper.

Case 5:22-cv-00050-D   Document 68   Filed 10/30/23   Page 14 of 15

must "squarely govern" the case and "must have placed the statutory or constitutional question beyond debate." *Aldaba v. Pickens*, 844 F.3d 870, 877 (10th Cir. 2016) (citations and internal quotation marks omitted). "[C]learly established law must be 'particularized' to the facts of the case." *White*, 137 S.Ct. at 552.

In light of the specific context of this case and the qualified immunity inquiry, Mr. Dorantes cannot show that Defendants violated Mr. Dorantes's clearly established, federal constitutional rights. Defendants are unaware of any precedent which states that a minor head cut being actively treated by medical staff was a violation of an inmate's 8th Amendment constitutional rights. Mr. Dorantes cannot cite to any U.S. Supreme Court or Tenth Circuit authority involving a similar fact pattern as that regarding Defendants' conduct which clearly establishes that such acts or omissions constitute a violation of federal rights. Nor can Mr. Dorantes demonstrate that the combined weight of authority from other courts puts the issue beyond debate such that every reasonable official would have understood that Defendants' acts were a violation of federal constitutional rights. Accordingly, Defendants are entitled to qualified immunity with regard to Mr. Dorantes's § 1983 claims.

WHEREFORE, Defendants, Tucker, Gamble, Whittaker, and Mangus, request this Court grant them summary judgment on all claims, along with any other relief deemed just and proper.
14

Respectfully submitted,

s/ Jon Williford
Stephen L. Geries, OBA No. 19101
Jon Williford, OBA No. 19598
COLLINS, ZORN & WAGNER, PLLC
429 N.E. 50th Street, Second Floor
Oklahoma City, OK   73105
(405) 524-2070/Fax: (405) 524-2078
E-mail:      slg@czwlaw.com
                  jmw@czwlaw.com
*ATTORNEYS FOR DEFENDANTS TUCKER, WHITAKER, GAMBLE AND MANGUS*

## CERTIFICATE OF SERVICE

I hereby certify that on October 30, 2023, I electronically transmitted the attached document to the Clerk of Court using the ECF System for filing. Based on the records currently on file, the Clerk of Court will transmit a Notice of Electronic Filing to the following ECF registrant:

Alexandra G. Ah Loy
HALL BOOTH SMITH, P.C.
6301 Waterford Blvd., Suite 200
Oklahoma City, OK 73118
AllieAhLoy@hallboothsmith.com
*Attorney for Defendants*
*April Beard and Samantha Solomon*

I further certify that on October 30, 2023, I served the attached document by U.S. Priority Mail, postage prepaid, to the following who is not registered participant of the ECF System:

Miguel A. Dorantes #18489-023
USP Thomson, United States Penitentiary
P.O. Box 1001
Thomson, IL 61285-1001
*Pro Se Plaintiff*

s/ Jon Williford
Jon Williford